Brent ARNOLD, Appellant

v.

TOYOTA MOTOR MANUFACTURING; Honorable Richard M. Joiner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2011–SC–000588–WC.

Supreme Court of Kentucky.

Aug. 23, 2012.

Stephanie Nicole Wolfinbarger, Cotton & Associates, Louisville, KY, for Appellant, Brent Arnold.

Kenneth J. Dietz, Lucas & Dietz, PLLC, Florence, KY, for Appellee, Toyota Motor Manufacturing.

## OPINION OF THE COURT

This appeal concerns an Administrative Law Judge's (ALJ's) decision to award the claimant temporary total disability (TTD) benefits for his work-related shoulder injury from "the date he stopped work, May 10, 2007" until May 8, 2009. The ALJ also awarded permanent income and medical benefits for the injury but denied the claims for cervical and lumbar spine injuries.

The Workers' Compensation Board determined that the record contained substantial evidence to support a finding that the claimant "left work on May 15, 2007" due to a work-related condition. A Court of Appeals majority reversed, however, convinced that the opinion and award failed to contain findings adequate to make clear whether the ALJ considered and understood all of the evidence relevant to the date when TTD began. The court remanded the claim with directions to reconsider the issue and make additional findings. The claimant asserts on appeal that the ALJ made adequate findings to support the TTD award.

We reverse to the extent that the ALJ made the findings of fact required by KRS 342.0011(11)(a). We affirm, however, to the extent that the ALJ failed to state in the opinion the evidentiary basis for finding that the claimant was not at a level of improvement from his injury that would permit a return to employment "from the date he stopped work, May 10, 2007."

Thus, we cannot determine whether the ALJ misstated the date that the claimant testified he stopped working due to the injury's effects; misunderstood the evidence concerning his reason for missing work on May 10, 2007; or chose May 10, 2007 based on other evidence.

## I. BACKGROUND.

The claimant was born in 1972, graduated from high school, and earned an Associates degree in electronic engineering. He began working for Toyota Motor Manufacturing in 1997; performed a job in body weld for ten years; and transferred to the assembly line in April 2007. The claimant testified that he began to experience shoulder symptoms in April 2006, which he related to the body weld job, but considered them to be no more than the normal aches and pains of performing physically demanding work. He requested a transfer to the assembly line in order to work on the day shift, thinking that the work would be less physically demanding due to lighter parts and less overtime.

The claimant began the assembly line job in April 2007, working on 500 to 600 automobiles per shift. He experienced right shoulder pain that radiated to his wrist and informed his team leader, who provided ice for his shoulder. The claimant submitted a form requesting family and medical leave for Thursday, May 10, 2007, stating that he needed to care for his wife, who had a migraine headache for which she could not take medication due to pregnancy, and also to care for their children. He testified subsequently that he worked for about two hours on Tuesday, May 15, 2007 before he informed his team leader that he was not feeling well; left work; and sought medical treatment.

The claimant testified when deposed that he quit working on May 15, 2007, explaining that he was experiencing shoulder and back pain "and it was creating stress." He stated that he sought treatment from Dr. Wechman because he "was extremely stressed at the time" due to "keeping up with my job, and basically being the sole provider for my family" and that Dr. Wechman gave him medication and took him off work. He explained that "[t]he physical pain was causing basically the stress of me being able to do my job." He testified at the hearing that his shoulder symptoms became "very prominent" in April 2007 and that he "became basically stressed" from working on the assembly line because his team leader, although concerned about his complaints of back, neck, and shoulder pain, "wanted ... to ramp [him] up more" and "wanted [him] running the jobs 100 percent."

Copies of two FMLA leave request forms were attached to the hearing transcript. The first indicates that the claimant sought leave to care for his spouse as of May 10, 2007; expected to return on May 11, 2007; and signed the form on May 11, 2007. The second indicates that the claimant sought leave for extreme stress and depression as of May 14, 2007; expected to return on May 16, 2007; submitted a physician's certification on June 5, 2007; and signed the form on June 13, 2007. The claimant acknowledged that neither leave request mentioned a work-related injury.

Medical records indicate that the claimant sought treatment from Dr. Wechman on May 15, 2007, complaining of chest pain that began about one month earlier. He attributed the chest pain to the stress and difficulty of his new job duties and also complained of right shoulder pain, depression, insomnia, irritability, anxiousness, and worrying. Dr. Wechman noted that the claimant now worked the day shift; took "lots of Advil/Naprosyn;" was building a house; and had a baby on the way.

He diagnosed an acute depressive disorder. The claimant returned on May 23, 2007, stating that he felt he had lost control of everything and did not understand why performing work that he did not like should bother him now when he had been able to "put up with it" for ten years.

The claimant testified that he attempted to make an appointment with Dr. Moskal regarding his shoulder after leaving work in May 2007 but first saw him in June 2007. Dr. Sajadi began treating his shoulder condition in October 2007. After conservative treatment failed to relieve the claimant's symptoms, Dr. Sajadi performed a subacromial decompression of the right shoulder and a right distal clavicle excision in November 2008. He released the claimant to return to work on May 8, 2009.

The parties stipulated that the claimant had not worked since May 15, 2007 but disputed among other things whether he sustained and gave timely notice of the injuries he alleged. The claimant's brief to the ALJ argued that he sustained a work-related cumulative trauma injury to his right shoulder when he transferred to the assembly line in April 2007. He argued that he was entitled to TTD benefits from May 15, 2007, when Dr. Wechman restricted him from working due to stress from the physical demands of his new position, through August 24, 2009, when Dr. Brooks assigned permanent restrictions. The employer argued, however, that the claim should be dismissed because the record failed to show that a work-related injury occurred on the dates alleged.

Convinced that the claimant sustained a right shoulder injury from working on the assembly line; that it became manifest on May 10, 2007; and that the claimant gave timely notice, the ALJ determined that the injury entitled him to medical benefits and to permanent income benefits based on a 6% permanent impairment rating. Addressing the issue of TTD, the ALJ stated on page 34 of the opinion as follows:

> Temporary total disability is defined in the Act as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a). Here again, I accept the determination of Dr. Prince that maximum medical improvement of the shoulder condition was achieved by May 8, 2009. I conclude that during the time from the date he stopped work, May 10, 2007, until the date of May 8, 2009, Brent Arnold had not reached maximum medical improvement and had not reached a level of improvement that would permit a return to employment. Where an employee has not reached maximum medical improvement and faces restrictions that preclude the employee from returning to his customary work or work that the employee was performing at the time of injury, it is permissible to find a temporary total disability for the duration of those conditions. *Central Kentucky Steel v. Wise*, Ky., 19 S.W.3d 657 (2000).

The employer filed a petition for reconsideration, asserting that the decision contained a patent error because no evidence supported a conclusion that the claimant's shoulder condition prevented him from working as of May 10, 2007. Moreover, not only did his leave request for May 10, 2007 state that he needed to care for his pregnant wife, no physician took him off work based on his right shoulder condition until he had surgery in November 2008. The ALJ denied the petition, stating only that he had reviewed the record again and also reviewed the opinion and award but found no patent error.

Appealing, the employer asserted that the ALJ erred by ordering TTD benefits to commence on May 10, 2007 because the claimant's absence from work to care for a sick spouse was not evidence that his shoulder condition prevented him from working at that time. The employer argued that TTD began no earlier than November 2008, on the date of the shoulder surgery. It did not challenge the finding that the injury became manifest on May 10, 2007.

The claimant responded that Dr. Wechman's May 15, 2007 report and subsequent medical evidence supported an award of TTD benefits "prior to [his] Right Shoulder surgery." He requested the Board to affirm the TTD award or to remand the claim for an award from May 15, 2007 through May 8, 2009.

The Board affirmed. Convinced that the ALJ could reasonably find the claimant "left work on May 15, 2007" as a result of a work-related condition, the Board determined that substantial evidence supported the TTD award. The opinion failed to address the fact that the ALJ chose May 10, 2007 rather than May 15, 2007 as the date that the claimant stopped working due to his injury.

The employer's petition for review in the Court of Appeals argued that "[n]either the medical proof nor the facts surrounding the Plaintiffs leaving employment" supported a TTD award beginning on May 10, 2007; that the ALJ did not "make sufficient findings of fact to determine why he ordered such benefits;" that the Board usurped the ALJ's function by making findings of fact; that the ALJ's opinion "was devoid of reasoning" concerning the period of TTD; and that TTD actually began in November 2008. The claimant responded that the ALJ made sufficient findings regarding "the date of Mr. Arnold's injury and the date of maximum medical improvement" to support the TTD award.

A divided Court of Appeals reversed, convinced that the ALJ's "findings" were inadequate to be certain that the ALJ considered and understood all of the relevant evidence. As a consequence, the court found it unnecessary to address whether the record contained substantial evidence to support the decision. Noting the ALJ's failure to state what evidence showed that the claimant's shoulder injury prevented him from working as of May 10, 2007, the court remanded the claim for reconsideration and additional findings.

The claimant argues on appeal that the ALJ provided "a detailed and thorough" review of the evidence. He maintains that the ALJ made sufficient findings of fact concerning the date of injury and the date of MMI to support the TTD award.

The employer urges the court to affirm the decision to remand the claim, arguing that the record contains no evidence the claimant's shoulder condition prevented him from working as of May 10, 2007; that the ALJ failed to state the factual basis for awarding benefits as of that date; and that the ALJ's findings are insufficient to determine whether substantial evidence supported the chosen date.

## II. ANALYSIS.

A worker's entitlement to TTD may or may not begin on the date of injury. TTD is payable under KRS 342.0011(11)(a) during periods when a worker has not reached MMI from the effects of an injury and has not reached a level of improvement that would permit a return to customary employment.[1] Both factors must be present throughout an

---

1. *Central Kentucky Steel v. Wise,* 19 S.W.3d 657 (Ky.2000).

awarded period of TTD.[2] Chapter 342 holds an employer liable for all of the injurious consequences of a work-related injury that are not attributable to an independent, intervening cause.[3] Although causation and the date of MMI are medical questions, a worker's testimony may provide adequate support for a finding concerning his inability to work at a particular point in time.[4]

The court determined in *Big Sandy Community Action Program v. Chaffins*[5] that "KRS 342.275 requires nothing more than an award, findings of fact, and rulings of law." Convinced that the statute did not require the factfinder "to provide for the record a discussion and analysis of either the evidence or the law," the court noted a regulatory provision stating that "formal opinions will be delivered only in those cases in which the legal questions are novel or important, or the facts are so complicated as to require detailed analysis." Chapter 342 and the regulations have been amended extensively since the decision in *Chaffins.*

Since January 4, 1988, KRS 342.285(1) has designated an ALJ rather than the Board as being the finder of fact.[6] Like the 1970 and 1980 versions of KRS 342.275, KRS 342.275(2) presently requires the award, order, or decision in a workers' compensation claim to be accompanied by "a statement of the findings of fact, rulings of law, and any other matters pertinent to the question at issue." Although KRS 342.285(1) permits an appeal to the Board, KRS 342.285(2) prohibits the Board from re-weighing the evidence and directs the Board to "dispose of the appeal in a summary manner." The Board's function under the statute is to determine whether the ALJ "acted without or in excess of his powers;"[7] whether the decision "was procured by fraud;"[8] or whether the decision was erroneous as a matter of law.[9] Legal errors include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. KRS 342.290 limits review by the courts to matters subject to review by the Board and to legal errors made by the Board or lower court.

■ The regulations adopted August 5, 1988 and thereafter do not contain a provision that restricts the issuance of formal opinions. Thus, unlike the "old" Board, ALJs render formal opinions when deciding all workers' compensation cases. Mindful that Chapter 342 and the Kentucky Constitution require review of decisions in post–1987 workers' compensation claims by the Board, the Court of Appeals, and the Supreme Court,[10] when requested, we conclude that KRS 342.275(2) and KRS 342.285 contemplate an opinion that summarizes the conflicting evidence concerning disputed facts; weighs that evidence to make findings of fact; and determines the

2. *Magellan Behavioral Health v. Helms,* 140 S.W.3d 579 (Ky.App.2004).

3. *Beech Creek Coal Co. v. Cox,* 314 Ky. 743, 744, 237 S.W.2d 56, 57 (1951).

4. *Hush v. Abrams,* 584 S.W.2d 48 (Ky.1979); *Carte v. Loretto Motherhouse Infirmary,* 19 S.W.3d 122 (Ky.App.2000).

5. 502 S.W.2d 526, 531 (Ky.1973).

6. 1987 Ky. Acts (Ex.Sess.) ch. 1, § 34.

7. KRS 342.285(2)(a).

8. KRS 342.285(2)(b).

9. KRS 342.285(2)(c), (d), and (e). *See also American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission,* 379 S.W.2d 450, 457 (Ky.1964).

10. *Vessels v. Brown–Forman Distillers Corporation,* 793 S.W.2d 795 (Ky.1990).

legal significance of those findings. Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding [11] does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable.[12]

■ Parties' briefs, ALJ opinions, and appellate opinions confuse matters by referring loosely to evidence as "facts" or using the term "finding" to refer to a legal conclusion. Such confusion occurred in this case. KRS 342.0011(11)(a) requires two findings of fact: 1.) that the worker has not reached MMI from the work-related injury; and 2.) that the worker has not reached a level of improvement that would permit a return to employment. We reverse the Court of Appeals to the extent that the ALJ made both essential findings.

■ The parties disputed the date for commencing the claimant's TTD award. The claimant testified that he left work on May 15, 2007 due to stress and depression resulting in part from work-related shoulder and back pain. He first sought medical treatment from Dr. Wechman on May 15, 2007, complaining of chest pain for the past month as well as stress and shoulder pain. He argued in his brief to the ALJ that his entitlement to TTD began on May 15, 2007 because the stress and the depression diagnosed on that date resulted at least partially from his work-related shoulder injury.

Implicit in the ALJ's decision to reject the employer's argument that the shoulder injury did not prevent the claimant from working until November 2008 are findings that pain from the injury contributed to causing the stress and depression that Dr. Wechman diagnosed on May 15, 2007 and that the effects of the injury, *i.e.*, pain, stress, and depression, resulted in the claimant's inability to work. The ALJ's opinion recited evidence sufficient to reveal the evidentiary basis for the finding that the claimant's injury prevented him from performing customary work in May 2007 rather than November 2008. The opinion also recited evidence sufficient to reveal the evidentiary basis for determining that the claimant had not reached MMI from his injury as of May 10, 2007. It did not, however, recite evidence that revealed the evidentiary basis for finding that the claimant was not at a level of improvement from his injury that would permit a return to employment "from the date he stopped work, May 10, 2007."

Even the claimant did not assert that his injury prevented him from working as of May 10, 2007 rather than May 15, 2007. His testimony and the leave request that he signed on May 11, 2007 indicated that he requested leave on May 10, 2007 to care for his wife, who was ill. Nothing appears to indicate whether he was scheduled to work at any time from Friday, May 11, 2007 through Monday, May 14, 2007. The ALJ's otherwise exhaustive summary of the evidence failed to mention the claimant's leave request for May 10, 2007 or to mention his testimony concerning the reason for his absence on that date. The first reference to the date occurred when the ALJ found on page 34 that "from the date

---

11. *See Kentland Elkhorn Coal Corporation v. Yates*, 743 S.W.2d 47 (Ky.App.1988); *Shields v. Pittsburg and Midway Coal Mining Company*, 634 S.W.2d 440 (Ky.App.1982). Although based on the pre–1988 version of Chapter 342 and the pertinent regulations, these cases stand for the principle that litigants are entitled to know the evidentiary basis for findings of fact and conclusions of law.

12. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986).

he stopped work, May 10, 2007," he had not reached MMI and had not reached a level of improvement that would permit a return to employment.

Like the opinion, the order denying the employer's petition for reconsideration failed to show that the ALJ understood the evidence concerning the claimant's reason for missing work on May 10, 2007. Nor did it state the ALJ's evidentiary basis for finding that the claimant had not reached a level of improvement from his injury that would permit a return to employment as of May 10, 2007.

The employer has maintained from the outset that no evidence supported a finding that the claimant's shoulder condition prevented him from working as of May 10, 2007. We affirm the Court of Appeals to the extent that we are unable to determine whether the ALJ simply misstated May 10, 2007 as being the date that the claimant testified he stopped working due to the effects his injury; misunderstood the evidence concerning his reason for missing work on May 10, 2007; or chose May 10, 2007 based on other evidence. Mindful that a worker's entitlement to TTD may or may not begin on that date that a gradual injury becomes manifest, we remand this matter to the ALJ to clarify that portion of the decision.

The decision of the Court of Appeals is hereby affirmed in part and reversed in part and this claim is remanded for further proceedings in accordance with this opinion.

All sitting. All concur.