# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

DATE 1/3/19 Kim Redmon, DC

2018-SC-000091-WC

ANN TAYLOR, INC. APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.      CASE NO. 2016-CA-001265
WORKERS' COMPENSATION BOARD NO. 14-WC-65846

JAMES MCDOWELL; APPELLEES
HON. STEVEN G. BOLTON,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

An Administrative Law Judge (ALJ) awarded temporary total disability (TTD), permanent partial disability (PPD), and medical benefits for injuries to James McDowell's right elbow. However, the ALJ dismissed claims for benefits for McDowell's right shoulder injuries, finding a failure to establish a causal relationship for the injury and a failure to provide the employer, Ann Taylor, Inc. (Ann Taylor) due and timely notice. The Workers' Compensation Board (the Board) affirmed the ALJ regarding the elbow injuries but reversed in part, holding that McDowell gave due and proper notice as a matter of law. The

Board also vacated in part and remanded the matter for the ALJ to make more sufficient findings to support the conclusions on causation. The Court of Appeals affirmed. For the following reasons, we affirm the Court of Appeals.

## I. BACKGROUND.

McDowell began working for Ann Taylor in 2011, where he first worked in the sorting department. He later worked in the receiving and shipping departments, where he loaded and unloaded boxes from the delivery trucks. The boxes ranged from forty to sixty pounds. On October 2, 2014, McDowell was loading boxes onto a truck with two other employees. The boxes were typically stacked five or six boxes high from the floor to the top of the tractor trailer. One of the rows of boxes started to fall and McDowell and the other two employees tried to back out of the way. The boxes hit McDowell causing him to fall and hit his elbow on the conveyor that brings boxes to the truck for loading. McDowell also claims to have hit his right shoulder on the side of the truck as he was falling down.

McDowell continued to work after falling but alleged he did inform his supervisors, Gene Lilly and Laura Whitlock, of the incident. Whitlock told him he could get himself checked out, but McDowell said he was okay. As the day progressed, McDowell's elbow started swelling and getting stiff. McDowell informed Whitlock that he was going to go home and put ice on the elbow. The next day McDowell continued to work even though his elbow continued to swell. Whitlock said she was going to send him to BaptistWorx, a medical provider across the street from Ann Taylor. There is conflicting evidence in the

2

record of whether McDowell went to BaptistWorx on Friday, October 3, 2014, or Monday, October 6, 2014. McDowell testified in his deposition that Whitlock filled out an incident report on October 6, 2014, when McDowell came back from BaptistWorx. McDowell testified that he told Whitlock he experienced pain in his right elbow all the way up to his shoulder and he later informed his physical therapist of pain in his right shoulder.

McDowell went to physical therapy, at the end of which he informed his orthopedic doctor, Dr. Bonnarens, that he was having pain in his right shoulder. Dr. Bonnarens then scheduled an MRI of McDowell's shoulder and began treating the right shoulder pain and recommended surgery. The surgery occurred in May 2015 and McDowell testified that the symptoms did not improve after the surgery, even after subsequent physical therapy on the shoulder. Ann Taylor's workers' compensation carrier denied approval for the surgery, so McDowell obtained coverage for the surgery through his private health insurance provider. McDowell did not return to work after October 6, 2014. McDowell did not disclose a shoulder injury on his New Patient Information Form at BaptistWorx on October 6, 2014. McDowell did not report falling in the truck when he first saw Dr. Bonnarens on October 9, 2014.

McDowell testified via deposition, and a final hearing was conducted with McDowell testifying and Ann Taylor and McDowell both submitting medical records to the ALJ. The ALJ outlined the testimony in the Opinion, Award and Order. The ALJ found "multiple versions of when the employer was notified of the Plaintiff's work-related injury." When McDowell presented to BaptistWorx

3

on October 6, 2014, he only disclosed injury to his right elbow and made no mention of any symptoms or injury to his shoulder. The First Report of Injury or Illness (FROI) form completed in McDowell's presence by McDowell's supervisor, Laura Whitlock, says nothing about a shoulder injury; however, McDowell did not sign the injury report. Dr. Bonnarens described McDowell's history on the initial appointment as an injury to his right elbow. The ALJ found that Dr. Bonnarens was informed on December 16, 2014, of an alleged right shoulder injury. McDowell spoke with an insurance adjuster, Jessica Whitmire, on February 6, 2015, and failed to mention any specific injury to his right shoulder or any fall occurring on October 2, 2014. McDowell now reports that he injured both his right elbow and right shoulder during a fall that occurred when the boxes fell on him on October 2, 2014. Thus, the ALJ found that the employer, Ann Taylor, was only apprised of the injury to McDowell's right elbow.

The ALJ further found that Dr. Bonnarens determined that the right shoulder injury and need for subsequent surgery was not related to the incident on October 2, 2014. Dr. Bonnarens reviewed McDowell's deposition transcript and testified that McDowell's version of events would be physically impossible because it would require a 180-degree spin of his body to injure his right elbow and his right shoulder. McDowell's contradictory version of events, and the medical evidence in the record, created serious concerns regarding McDowell's credibility, and compelled the ALJ to find that the shoulder injury was not caused by the incident on October 2, 2014. The ALJ concluded that

4

the right elbow injury was compensable, but that McDowell had failed to carry his burden in proving a work-related injury to his right shoulder due to a lack of notice to his employer and a lack of proof of causation.

McDowell filed a motion to reconsider before the ALJ requesting additional findings of fact on the notice issue. Specifically, McDowell requested the ALJ indicate how Ann Taylor was harmed by the notice on the right shoulder injury and how the notice provided by McDowell was non-compliant with Ann Taylor's policy. McDowell further requested findings on how he was supposed to provide notice of the right shoulder injury before knowing that such injury existed. McDowell also requested further findings regarding Dr. Bonnarens's conclusions on lack of causation and argued patent error in the ALJ's failure to mention the independent medical examination (IME) performed by Dr. Craig Roberts, which presented a medical opinion in support of the causation element.

The ALJ denied the motion to reconsider stating that the ALJ is only required to adduce the facts and conclusions that support the ALJ's finding and is not required to parse out the evidence if the ALJ believes the evidence is not relevant or material to the decision. McDowell then appealed to the Board. The Board reversed in part, vacated in part, and remanded. Member Rechter dissented without separate opinion. The Board, in a lengthy opinion, quoted multiple portions of McDowell's deposition and hearing testimony, as well as multiple portions of the ALJ's opinion. The Board held that the evidence regarding notice compelled a different result. The Board also held that the ALJ

5

failed to provide sufficient findings on which he based his conclusion of lack of causation of the shoulder injury. This lack of findings did not sufficiently apprise the parties or the Board of the basis of the ALJ's decision; thus, the Board agreed that remand for additional findings on causation was necessary. Ann Taylor appealed, and the Court of Appeals affirmed the opinion of the Board. Ann Taylor appealed to this Court. After a careful review of the record and applicable law, we affirm.

## II. STANDARD OF REVIEW.

The ALJ, as fact finder, has the sole authority to determine the weight, credibility, substance and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). McDowell, as the claimant, had the burden of proving every element of his claim, including that he provided notice to Ann Taylor of the claim and that the right shoulder injury was caused by the work-related accident. *Gibbs v. Premier Scale Co./Indiana Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001).

> Although KRS[1] 342.285(2) prohibits the Board from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact," KRS 342.285(c) and (d) include within the scope of the Board's review the authority to determine whether the ALJ's decision conforms to the provisions of Chapter 342 and whether it is "clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record." These provisions allow the Board to determine whether the ALJ committed an error in applying the law to the facts, such as by misapplying or failing to consider an applicable statute or legal theory or by rendering a decision that the evidence does not support. KRS 342.290 limits the scope of review by the Court of Appeals to that of the Board and also to errors of law arising before the Board.

---

[1] Kentucky Revised Statute (KRS).

If the Board concludes under KRS 342.285(c) that the ALJ applied Chapter 342 correctly, the Board may determine under KRS 342.285(d) whether substantial evidence supports a decision favoring the claimant or whether the favorable evidence is so overwhelming as to have compelled a finding for the claimant. If the Board concludes that the ALJ misapplied Chapter 342, the Board may determine that the claim must be remanded for additional findings or determine that the evidence compels a particular finding when Chapter 342 is applied correctly, in which case a remand is unnecessary.

*American Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602-03 (Ky. 2010) (internal citations omitted).

Parties to a workers' compensation action are entitled to a sufficient explanation by the ALJ of the basis for the decision. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). Litigants are entitled to know the evidentiary basis for an ALJ's findings of fact and conclusions of law, and an ALJ's opinion must summarize the conflicting evidence concerning disputed facts, weigh the evidence to make findings of fact, and determine the legal significance of those findings. *Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56, 61-62 (Ky. 2012). "Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable." *Id.* at 62 (footnote omitted).

# III. ANALYSIS.

## A. The ALJ failed to provide sufficient findings to support the conclusions that McDowell's shoulder injury was not caused by the incident on October 2, 2014.

Ann Taylor agrees that the ALJ's findings of fact must be sufficient to apprise the parties of the basis for his decision and to allow for a meaningful review on appeal, *Shields v. Pittsburgh and Midway Coal Mining Co.*, 634 S.W.2d 440 (Ky. App. 1982), yet Ann Taylor's first argument is that the ALJ's findings were far more than sufficient to allow for meaningful review.

The Board held that the ALJ's conclusions were based upon medical evidence which he did not identify, and such conclusions spanned only two sentences in the ALJ's opinion.

> The two sentences the ALJ provided concerning the issues of causation regarding McDowell's right shoulder injury, do not sufficiently apprise the parties or this Board of the basis for the ALJ's decision. The ALJ concluded McDowell's lack of credibility compelled a finding the shoulder condition is not work-related. This conclusion was based, in part, upon the medical evidence which the ALJ did not identify. Thus, the parties and the Board can only surmise as to the medical evidence upon which he relied.[2]

The Court of Appeals agreed with the Board that the ALJ did not provide a sufficient explanation of the basis for his decision, despite the ALJ incorporating his analysis into his findings of fact.

"Medical causation is a matter for the medical experts." *Hill v. Sextet Min. Corp.*, 65 S.W.3d 503, 507 (Ky. 2001). "Medical causation must be proved to a reasonable medical probability with expert medical testimony but KRS

---

[2] Opinion of the Workers' Compensation Board, p. 58-59.

8

342.0011(1) does not require it to be proved with objective medical findings. . . . Where there is conflicting medical testimony concerning the cause of a harmful change, it is for the ALJ to weigh the evidence and decide which opinion is the most credible and reliable." *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004) (internal citations omitted).

"[W]hen the question is one properly within the province of medical experts, the [ALJ] is not justified in disregarding the medical evidence." *Kingery v. Sumitomo Electric Wiring*, 481 S.W.3d 492, 496 (Ky. 2015) (internal citations omitted). *"[O]ur legal system requires reliable expert proof on issues such as medical causation and the necessity of medical treatment when they would not be apparent to a layperson. It does so because this is the only way to reasonably ensure that the fact-finder answers those questions reasonably, rather than arbitrarily." Id.* at 499-500 (emphasis added).

It is true that conflicting evidence was presented in this case. It is also true that the ALJ incorporated the "Analysis" section of his opinion into the findings of fact and conclusions of law. However, we agree with the Board and the Court of Appeals that the ALJ acted in error; such error requires a remand for additional and specific findings.

The case of *Passmore v. Lowes Home Center*, 2008-SC-000224-WC, 2008 WL 5274855, *1 (Ky. Dec. 18, 2008), is instructive. In *Passmore*, the ALJ determined that Passmore lacked the physical capacity to return to the work performed at the time of injury but was only partially disabled. Passmore filed a petition for reconsideration requesting specific findings regarding alleged

9

errors of fact and misinterpretation of the evidence. *Id.* The ALJ denied the petition for reconsideration. This Court cited *Big Sandy Community Action Program v. Chaffins*, 502 S.W.2d 526 (Ky. 1973), for the proposition that parties are entitled to findings of fact sufficient to apprise them of the basis for the decision and to permit a meaningful appellate review. *Passmore*, 2008 WL 5274855, at *2. Because the record contained substantial evidence supporting both a finding of partial disability and total disability, the Court held that *Passmore was entitled to be certain that the ALJ considered and understood all of the relevant evidence when finding him to be only partially disabled. Id.* at *3.

In the ALJ's findings of fact and conclusions of law, he stated that McDowell's right elbow injury was compensable based on the testimony of McDowell, Dr. Bonnarens, and Dr. Roberts. In addressing the right shoulder injury, the ALJ stated that McDowell had not carried his burden of proof regarding causation and notice, only stating that he was basing his decision on the total weight of the lay and medical evidence regarding the work accident of October 2, 2014. The ALJ did incorporate the "Analysis" section of his opinion into his findings of fact and conclusions of law. However, the "Analysis" section of the ALJ's opinion did not summarize the total of the medical testimony and contains some internal inconsistencies.

We first note that the IME report by Dr. Roberts, and Dr. Roberts's opinion as to causation, were stated in the "Summary of the Evidence" section of the ALJ's opinion. Dr. Roberts was not mentioned at all in the "Analysis" section of the opinion, and thus, nothing regarding Dr. Roberts was

10

incorporated into the ALJ's findings of fact and conclusions of law. As such, such findings were incomplete.

Additionally, as McDowell points out, Dr. Bonnarens opined that the right shoulder injury **was related to the work accident** on October 2, 2014 in two separate medical records filed along with the Form 101. A December 18, 2014, medical record states: "It looks like we are dealing primarily with a rotator cuff tear. This is consistent with the injury that he describes." A March 19, 2015, medical record states that McDowell clarified the history of the accident, explaining his fall when the boxes fell on top of him. The notes read: "Based on the information and the history provided by the patient, it does look like the rotator cuff tear was reasonably related to his fall. . . ." These remarks by Dr. Bonnarens are not mentioned anywhere in the ALJ's opinion, award, and order. This Court would also note that a review of the record shows an additional medical report from High Field & Open MRI, dated December 16, 2014, which states under "Clinical History:" "59-year-old male with right shoulder pain and limited range of motion status post work injury two months ago."

Rather than outline these opinions by Dr. Bonnarens, the ALJ mentioned a March 6, 2015 and a September 11, 2015 report from Dr. Bonnarens concluding that the shoulder injury was not caused by the work incident. However, closer review of these documents reveals more than mere equivocation on the part of Dr. Bonnarens. The March 6 document listed six questions, with the first three being particularly relevant.

11

1. Is the major contributing cause and need for surgery related to this WC accident? **No.**

2. Is the recommended rotator cuff surgery causality (sic) related to the work injury of 10/2/14? **No.**

3. But for the work event would he require the rotator cuff surgery? **No. Pt. was asymptomatic prior to work incident.**

The September 11 document is a questionnaire completed by Dr. Bonnarens. In pertinent part, it asks whether McDowell's deposition testimony regarding the mechanism of injury is consistent with the mechanism of injury described to Dr. Bonnarens. Dr. Bonnarens answers "No – it would have required a 180-degree spin." The next question asks if Dr. Bonnarens believes that McDowell's right shoulder condition was caused by the mechanism of injury as he describes during his deposition. Dr. Bonnarens answered, "No, if he had to spin," "Yes, if he did hit shoulder on the wall." Question 7 asked if Dr. Bonnarens believed that the right shoulder surgery performed on May 13, 2015 was related to the work injury occurring on October 2, 2014. Dr. Bonnarens answered, "Based on hx yes. Based on reconstruction of accident no."

The March 6 document indicates that Dr. Bonnarens did not think the shoulder injury was caused by the work accident, but noted, without explanation, that, but for the work accident, McDowell would not have needed surgery, and McDowell was asymptomatic prior to the work accident. In fact, Dr. Bonnarens's answer to question 3 on the March 6 document is completely

12

contradictory to his previous answers. On the October 15 questionnaire, Dr. Bonnarens states that the shoulder injury was not related to the work incident if based on reconstruction of the accident; however, the March 19, 2015, medical record states that McDowell clarified the history of the accident, and the notes read: "Based on the information and the history provided by the patient, it does look like the rotator cuff tear was reasonably related to his fall."

The record in this case contains substantial evidence to support a finding of lack of causation, but it also contains substantial evidence that, if believed, would have supported a finding of work-related causation. *Passmore*, 2008 WL 5274855, at *3.

> [K]RS 342.275(2) and KRS 342.285 contemplate an opinion that summarizes the conflicting evidence concerning disputed facts; weighs that evidence to make findings of fact; and determines the legal significance of those findings. Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable.

*Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56, 61-62 (Ky. 2012) (internal citations omitted). The record reflects contradictory evidence in both Dr. Bonnarens's testimony and Dr. Bonnarens's notes in the medical records. We can glean that the ALJ did not find McDowell to be credible, but like the Court of Appeals and the Board, we are left to wonder how the ALJ weighed the medical evidence in determining the issue of causation, because the ALJ's opinion does not "summarize the conflicting evidence accurately." Because McDowell and reviewing courts are entitled to an accurate and complete basis for which the

13

ALJ made his or her decision, we affirm the decision of the Court of Appeals and remand this matter to the ALJ for sufficient findings on the basis of causation.

## B. The ALJ erred in concluding that McDowell did not provide due and timely notice of his injury, thus, the Board and Court of Appeals were correct in finding proper notice as a matter of law.

KRS 342.185(1) states: "Except as provided in subsections (2) and (3) of this section, no proceeding under this chapter for compensation for an injury or death shall be maintained unless a *notice of the accident* shall have been given to the employer as soon as practicable after the happening thereof. . . ." (emphasis added). KRS 342.190 reads that "the notice shall state the nature and cause of the accident." KRS 342.200 states:

> The notice shall not be invalid or insufficient because of any inaccuracy in complying with KRS 342.190 unless it is shown that the employer was in fact misled to his injury thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this chapter if it is shown that the employer, his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause.

The issue of notice is ultimately a legal question but notice also involves factual findings, making it a mixed question of law and fact. *Blackburn v. Lost Creek Mining*, 31 S.W.3d 921, 925 (Ky. 2000).

> The words "as soon as practicable" should be given a liberal construction, so as not to defeat, without just cause, the compensation to which a meritorious claimant is entitled, and when a claimant, acting in good faith, attempts to give the notice very shortly after he learns the nature and extent of his injury, and within the year, he should not be denied compensation, unless it appears that the employer "was in fact misled to his injury" by the failure to receive earlier notice. . . .

14

*Bates & Rogers Const. Co. v. Allen*, 210 S.W. 467, 473 (Ky. 1919). "Where the employer is not prejudiced by the failure to give the notice as early a date as it might have been or should have been given, and where the failure to give it sooner was occasioned by an honest mistake on the part of the employe [sic], we do not think a fair consideration of the statute warrants the rejection of the employe's [sic] claim for compensation solely on account of the delay in giving notice." *Id.*

"[W]ant of notice or delay in giving notice is no bar if it is shown that the employer or his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause; also that the notice shall not be invalid or insufficient because of any inaccuracy in complying with KRS 342.190 unless it is shown that the employer was in fact misled thereby." *Carr v. Wheeler*, 265 S.W.2d 490, 491-92 (Ky. 1953) (citing KRS 342.200). "Any verbal information communicated to the employer is sufficient where it brings knowledge to him that the employee has received an injury arising out of and in the course of his employment, together with its general nature and date of its happening." *Id.* at 492.

The ALJ determines the factual question of when notice is given, but whether notice is adequate and given as soon as practicable is a legal question. *Harry M. Stevens Co., Inc. v. Workmen's Compensation Board*, 553 S.W.2d 852 (Ky. App. 1977) (stating that it is a conclusion of law that notice was due and timely given). An ALJ's findings on factual issues are conclusive if supported by substantial evidence, but when legal questions or mixed questions of law

15

and fact are involved, the reviewing court has greater latitude to determine whether the decision below is supported by evidence of probative value. *Purchase Transportation Services v. Estate of Wilson*, 39 S.W.3d 816, 817-18 (Ky. 2001). The ALJ found that McDowell gave notice on December 16, 2014, based on the MRI report. The ALJ did not mention, in the Analysis section of his opinion, the November 6, 2014 record of Dr. Bonnarens that establishes the right shoulder injury and first establishes the probable diagnosis of a rotator cuff tear and orders the MRI. To quote the ALJ's opinion, "It was only on 12/16/2014, some 2 ½ months after the supposed date of injury that Dr. Bonnarens was presumably informed of the alleged right shoulder injury as that is when he ordered an arthrogram MRI of the right shoulder, arthroscopic repair of rotator cuff and physical therapy." Such a finding is not supported by substantial evidence because the record is clear that McDowell reported shoulder pain, and Dr. Bonnarens preliminarily diagnosed the rotator cuff tear, more than a month prior to the date found by the ALJ. This evidence is clear without taking into account McDowell's testimony that he informed Ann Taylor of his shoulder pain on several prior occasions, even on the day of the injury. In *Trico County Development & Pipeline v. Smith*, 289 S.W.3d 538, 543 (Ky. 2008), the claimant testified that he provided notice orally, but the ALJ found that he did not. The same is true here, and as in *Trico*, that finding is reasonable under the evidence and is not disturbed on appeal. *Trico*, 289 S.W.3d at 543.

16

However, the undisputed record shows that Dr. Bonnarens was informed of the shoulder injury and the preliminary diagnosis of a rotator cuff tear was made on November 6, 2014; not on December 16, 2014, as the ALJ found. Such error compels a different outcome as the record only supports this date as the earliest indication of notice. Because the fact of the notice date is clear from the record, this Court can apply the law. In doing so, we agree with the Court of Appeals that notice was adequate as a matter of law.

> When read in concert KRS 342.185 and KRS 342.190 require an injured worker to give written notice of a work-related accident, including certain details regarding the accident and resulting injury, and to do so "as soon as practicable" after the accident occurs. The purpose of the requirement is threefold: 1.) to enable an employer to provide prompt medical treatment in an attempt to minimize the worker's ultimate disability and the employer's liability; 2.) to enable the employer to investigate the circumstance of the accident promptly; and 3.) to prevent the filing of fictitious claims.

*Granger v. Louis Trauth Dairy,* 329 S.W.3d 296, 298 (Ky. 2010) (internal citations omitted). The purposes of the notice requirement were fulfilled with McDowell's complaints of the injury to Dr. Bonnarens on November 6, 2014.[3] As such, the Court of Appeals was correct, and we affirm.

---

[3] Ann Taylor argued in its brief that notice to Dr. Bonnarens is not notice to the employer. That is correct. However, McDowell testified that he was released to perform "light-duty" work, so McDowell delivered documentation to Ann Taylor after his visits to Dr. Bonnarens and BaptistWorx, and Ann Taylor made copies of his documentation, which included notice of his shoulder injury. But, because Ann Taylor did not have any light-duty work available, he never resumed employment. The record does not reflect that Ann Taylor presented any evidence in rebuttal. We also note that the ALJ's finding that McDowell provided notice on December 16, 2014 was also based on Dr. Bonnarens's notes during an office visit with McDowell. Of course, Ann Taylor would not have made the same argument, that notice to Dr. Bonnarens is not notice to Ann Taylor, based on the ALJ's erroneous finding because such finding was in its favor. Because, as discussed, the ALJ's finding was in clear error, Ann Taylor's argument is rejected.

17

## IV. CONCLUSION.

For the above stated reasons, we affirm the Court of Appeals and remand this case to the ALJ for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

James Gordon Fogle
Fogle Keller Walker, PLLC

COUNSEL FOR APPELLEE:

John Warren Spies
Morgan and Morgan