# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED:  JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0411-WC

ARYONE LYMON                                                                        APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2019-CA-1842
WORKERS' COMPENSATION BOARD NO. WC-17-54578


GEORGIA PACIFIC; HONORABLE MONICA                        APPELLEES
RICE-SMITH, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Aryone Lymon appeals from the Court of Appeals' decision upholding an Administrative Law Judge's (ALJ) dismissal of her workers' compensation claim.  Lymon argues that the evidence was so overwhelming as to compel a finding in her favor and that the ALJ failed to properly articulate the basis for her decision.  We disagree.  For the reasons stated below, we affirm.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

Aryone Lymon worked at a Georgia Pacific factory as a Dixie Cup Machine Operator for approximately six months.  She worked a normal twelve-hour shift from 7:00 p.m. on December 1, 2017 until 7:00 a.m. on December 2, 2017.  Lymon testified that during that shift one of her duties was to change out twenty to thirty-pound rolls of paper on the bottom of the machines.  The

machines converted rolls of paper into small paper cups. She had to roll the paper from its rack to the machine and use a crank to lift the paper into position on the machine. She testified that the cranks were often broken, necessitating that she lift the roll with her right foot and hands a few inches to its position on the machine. Lymon also stated that she typically had to try two or three different rolls to find one that fit properly.

After her shift Lymon went home the morning of December 2, 2017 and showered, ate and went to bed. When she awoke that afternoon she immediately noticed a sharp pain in her right foot. While driving herself to work that evening she experienced pain as though her foot was asleep. She stated the pain was excruciating so she went to her sister's house and her sister took her to the emergency room.

Lymon's emergency room records dated December 2 indicate that on that date she complained of right leg numbness, pain in her right buttock radiating down her right leg, and difficulty with mobility in her toes and leg. She stated the symptoms began the day prior and had persisted for twenty-four hours or more. She also denied any acute injury or trauma. In addition, she reported injuring her fingers four days prior. Lymon was diagnosed with a pinched nerve and released.

Lymon did not go to work that day and was off work the rest of the weekend. The following Monday she began experiencing right leg weakness, urinary incontinence and increasing low back pain. She went back to the emergency room on December 5, 2017. An MRI revealed a herniated disc at

L4-L5 ruptured with a sequestered fragment which compressed a nerve root and caused cauda equina syndrome and right foot drop. The syndrome is a rare disorder affecting a bundle of roots at the lower end of the spinal cord called cauda equina.[1] Nerve roots in the lumbar spine are compressed, which is often caused by a severe ruptured disc.[2] Cauda equina syndrome is difficult to diagnose and may cause severe low back pain; pain, numbness or weakness in the legs; and loss of sensation in the legs or feet.[3]

Lymon underwent emergency back surgery by Dr. Harry Lockstadt on December 6, 2017 to remove the sequestered fragment at L4-L5. The surgery resolved her urinary incontinence and improved her low back pain, but she still experienced some weakness in her right foot. Lymon did not return to work for Georgia Pacific after December 2, 2017. Although Lymon could not identify a work event or work-related onset of symptoms, she believed that her work activity in general on December 1-2 caused the disc herniation.

On January 17, 2018 Lymon filed a workers' compensation claim alleging she was injured within the scope and course of her employment. In support of her claim Lymon filed medical questionnaires completed by Dr. Lockstadt. Dr. Lockstadt stated that it is possible that cauda equina syndrome can be caused by heavy lifting over a period of months, but unlikely. Additionally, he acknowledged that cauda equina syndrome can manifest

---

[1] WebMD, *Cauda Equina Syndrome Overview,* https://www.webmd.com/back-pain/guide/cauda-equina-syndrome-overview (last visited Apr. 27, 2021).

[2] *Id.*

[3] *Id.*

without specific incident and that it can have many causes, including heavy lifting. In a letter dated March 8, 2018, Dr. Lockstadt assessed a 13% impairment rating but noted that the impairment could decrease to 10% depending on Lymon's recovery.

Lymon testified by deposition on March 1, 2018. She recounted a 2015 motor vehicle accident after which she was diagnosed with a pinched nerve in her low back. She stated that her low back symptoms resolved after completing two months of physical therapy. She also provided details about her typical work activities, including a statement that the paper rolls she had to maneuver weighed between twenty and thirty pounds. Notably, at the hearing before the ALJ Lymon amended her estimate and indicated that the rolls weighed fifty pounds each. If the machine she was operating was out of paper, she had to put a new roll of paper on the machine. The machines have cranks for use when switching the rolls of paper but Lymon testified that if a crank was broken she had to lift the paper roll two or three inches off the ground with her foot and hand to place it on the machine.

Sharon Markle, Lymon's supervisor at Georgia Pacific, was deposed on May 25, 2018 and at that time had served as a plant supervisor for over eleven years. She testified that she interacted with Lymon about once an hour. Markle also testified that Lymon worked her entire shift without incident on December 1-2, 2017. She also testified that the next afternoon Lymon called into work to report she had smashed two fingers at work. Markle denied Lymon reported a low back or right foot injury at that time. Markle learned of

4

Lymon's low back condition when she received an email from the human resources department stating she was undergoing emergency surgery for ruptured discs. To her knowledge, no work event or accident occurred on December 1-2, 2017.

Markle also provided information about Lymon's duties as a Dixie Cup Machine Operator and the process of switching paper rolls at the Georgia Pacific facility. Operators are required to load the bottom paper rolls, which weigh about sixty pounds. Operators are supposed to roll the paper rolls off the rack and to the machine, use a crank to lower the machine, and slide on the rolls. Next, they are to use the crank to move the roll up and thread the paper into the machine. She also described Lymon's method of lifting rolls using a foot and hands as dangerous and an unauthorized shortcut. She testified that workers had been injured using this method in the past and that it was against company policy. Markle also was unaware of any broken cranks and did not believe any cranks had been broken while she had worked there over the past eleven years. Additionally, she testified that it was not Lymon's job to lift the bottom paper rolls and if they needed to be lifted Lymon was supposed to have another employee do so. No heavy lifting was required of Lymon at her job with Georgia Pacific.

Dr. Timothy Kriss evaluated Lymon on behalf of Georgia Pacific on April 4, 2018. He reviewed all medical records and radiology reports and examined and interviewed Lymon. Dr. Kriss opined that Lymon's injuries were natural and spontaneously occurring due to the natural aging process and Lymon's

5

degenerative disc disease. He further reported that there was "no evidence whatsoever to indicate any work-related causation for [the] right L4/L5 disc herniation." Lymon did not describe a work injury. Dr. Kriss acknowledged that the spontaneous nature of the herniation and Lymon's symptoms were odd but, nonetheless, he did not attribute Lymon's condition to her employment at Georgia Pacific. He further opined that the cauda equina syndrome had resolved, except the right foot drop.

Dr. Kriss assigned a 12% whole person impairment rating but was clear in his opinion that Lymon's impairment was not work-related. Dr. Kriss performed a second evaluation on December 12, 2018. He diagnosed Lymon with cauda equina syndrome and noted that although the syndrome resolved completely with surgical decompression, Lymon still has residual lumbar radiculopathy manifesting as chronic foot weakness with numbness and tingling. He opined that Lymon reached maximum medical improvement on December 6, 2018.

Lymon submitted the medical questionnaire of Dr. Brandon Cook dated November 15, 2018. Dr. Cook opined that a person can develop cauda equina syndrome by lifting heavy objects without a discernable instance of feeling pain. He believed that it is highly likely Lymon's cauda equina syndrome was caused as a direct and proximate result of her work activities lifting heavy rolls of paper. Notably, Dr. Cook's questionnaire does not state which medical records were reviewed and largely consists of "yes" or "no" answers to questions with little explanation. Dr. Cook's only statement is that Lymon "without a

6

doubt had cauda equina syndrome which was secondary to a large herniated disc which in her case was sudden which is usually correlated with heavy lifting." As Dr. Kriss highlighted, even if it is presumed that some type of lifting at work on December 1-2, 2017 caused Lymon's disc herniation, she nonetheless did not have a "sudden" development of cauda equina syndrome. Instead, she had no symptoms whatsoever throughout the December 1-2 work day or while at home that evening.

Lymon filed the October 23, 2018 medical records review report by Dr. Joseph Zehner who reviewed records from 2017 and 2018. He opined Lymon had pre-existing, dormant annular tears at L4-L5 and L5-S1 which were brought into a disabling reality by the work injury. He opined that all of Lymon's conditions, including the disc herniation and cauda equina syndrome, were related to the work injury. In response to questions, Dr. Zehner stated that cauda equina syndrome can be caused by heavy lifting over a period of months without a specific incident that would cause pain. Dr. Zehner assessed a 21% impairment rating.

The ALJ concluded that Lymon failed to satisfy her burden of proving that her low back condition is work-related. Clearly her condition was serious, but the ALJ was not convinced that Lymon's work activities caused her condition. Lymon's testimony was unpersuasive and the ALJ found it compelling that the treating surgeon, Dr. Lockstadt, did not believe Lymon's back condition was work-related. While there were competing medical opinions, the ALJ primarily relied on Dr. Kriss's opinion, which concluded that

Lymon's condition occurred naturally and spontaneously without any associated or triggering trauma. Further, the ALJ acknowledged that while repetitive heavy lifting can cause disc herniation she did not believe Lymon performed those activities. The ALJ denied Lymon's petition for rehearing.

The Workers' Compensation Board (Board) concluded that substantial evidence, namely Dr. Kriss's opinion, supported the ALJ's determination that Lymon failed to satisfy her burden of proof. The Board did not interpret Dr. Kriss's opinion, as suggested by Lymon, as requiring her to self-diagnose her condition in order to establish a work-related injury. Further, the numerous attacks on Dr. Kriss's opinion applied to the weight of the evidence and did not constitute an adequate basis for reversal. The Board affirmed the ALJ's opinion and order.

The Court of Appeals determined that Lymon failed to prove that the evidence was so overwhelming as to compel a different result and, further, that the ALJ properly relied on Dr. Kriss's opinion. The Court of Appeals rejected Lymon's assertion that Dr. Kriss relied on history that was substantially inaccurate or largely incomplete based on *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839 (Ky. 2004). The ALJ's findings mirrored Dr. Kriss's opinions and the lack of documented complaints linking Lymon's symptoms to a work-related injury or trauma was persuasive. Lymon now appeals the Court of Appeals' decision.

**ANALYSIS**

On appeal, Lymon argues that (1) the evidence was so overwhelming as to compel a finding in her favor; (2) Dr. Kriss's opinion cannot constitute substantial evidence because he based his opinion on Lymon's failure to self-diagnose her injury; and (3) the ALJ did not properly articulate the basis for her decision to allow the parties to be reasonably apprised of the basis of that decision.

## I.    The evidence was not so overwhelming as to compel a finding in Lymon's favor.

"If the party with the burden of proof fails to convince the ALJ, that party must establish on appeal that the evidence was so overwhelming as to compel a favorable finding." *Eddie's Serv. Ctr. v. Thomas,* 503 S.W.3d 881, 886 (Ky. 2016). As the claimant, Lymon had the burden of proving her workers' compensation claim, including causation. "If the fact finder finds against the person with the burden of proof [her] burden on appeal is infinitely greater." S*pecial Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986). "[A]n ALJ's decision should not be overturned on appeal unless it 'is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law.'" *Eddie's Serv. Ctr.*, 503 S.W.3d at 886, (quoting *Ira A. Watson Dep't Store v. Hamilton,* 34 S.W.3d 48, 52 (Ky. 2000)). "It is of no avail in such a case to show that there was some evidence of substance which may have justified a finding in [her] favor." *Special Fund,* 708 S.W.2d at 643.

Lymon claims that evidence that lifting the rolls of paper at work caused her herniated disc was compelling because it is undisputed that lifting increases pressure within a disc. Further, she argues that it is inconceivable that such a massive injury could occur without any cause whatsoever.

The ALJ noted the contrary medical evidence, acknowledging the opinions of both Dr. Cook and Dr. Zehner who believed Lymon's condition was work-related. She was persuaded, however, by the fact that Lymon's treating surgeon, Dr. Lockstadt, did not relate Lymon's back condition to her work activities. Dr. Lockstadt also stated that it was possible, but unlikely, that cauda equina syndrome is caused by heavy lifting over a period of months. He did not opine that a causal relation to work was within reasonable medical probability.

The ALJ is tasked with weighing the medical evidence in reaching a decision. Here, Lymon presented evidence to suggest her injuries were work-related. Georgia Pacific introduced competing evidence that suggested her injuries were unrelated to her work. Because Dr. Kriss's opinion (along with Dr. Lockstadt's evidence) supports the ALJ's determination that Lymon failed to prove that her injuries were work-related, it was not an unreasonable conclusion. "[T]he ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding." *Finley v. DBM Technologies*, 217 S.W.3d 261, 264 (Ky. App. 2007). Although the evidence could have supported a different finding, the ALJ, as fact-finder, has the sole authority to determine the weight, credibility, substance and

10

inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). The contrary opinions were not overwhelming and therefore the evidence did not compel a finding in Lymon's favor.

## II.     Substantial evidence supported the ALJ's findings.

Lymon argues that Dr. Kriss's opinion on causation cannot constitute substantial evidence because Dr. Kriss based his opinion on the fact that Lymon did not self-diagnose her condition as being work-related. After review of Dr. Kriss's reports, we disagree that he based his opinions on a lack of self-diagnosis.

Dr. Kriss's opinions constitute substantial evidence and support the ALJ's opinion and order. Notably, Dr. Kriss reviewed thirty-four medical records from December 2, 2017 through February 26, 2018, none of which documented any work-related onset of symptoms, work-related aggravation of symptoms, acute work injury or cumulative trauma injury. He also reviewed Lymon's December 5, 2017 MRI which he interpreted to support his diagnosis of a herniated disc caused by degenerative disc disease. Dr. Kriss also noted a study that supported his opinions. He acknowledged that while genetics are the predominant cause for disc degeneration, other factors, like occupational exposure from lifting, bending and twisting, can contribute, but still did not attribute Lymon's conditions to her work.

Concluding that the disc herniation occurred naturally and spontaneously, Dr. Kriss reached the following conclusions: (1) no evidence whatsoever indicated any work-related causation for the right L4-L5 disc

11

herniation; (2) Lymon did not have any onset of symptoms at work associated with a physical event or activity; (3) Lymon had no aggravation of symptoms at work or associated with a physical event or activity; (4) Lymon did not describe a work injury–discrete or cumulative and (5) the most common cause of lumbar disc herniation in humans is degenerative and atraumatic, causing roughly 80% of all symptomatic lumbar disc herniations; spontaneous degenerative causation is statistically the most likely cause of Lymon's disc herniation. Lymon's disagreement with Dr. Kriss's opinions would go to the weight of those opinions and does not constitute a basis for reversal. As noted, an ALJ's role is to determine the weight given to the evidence. *Paramount Foods,* 695 S.W.2d at 419.

Lymon is correct in asserting that an employee is not required to self-diagnose her condition as work-related. *Hill v. Sextet Mining,* 65 S.W.3d 503, 507 (Ky. 2001). But nothing in Dr. Kriss's opinions suggests that because Lymon did not self-diagnose her injuries as work-related, he could not find a causal relationship between her injuries and employment. Dr. Kriss provided lengthy explanations about causation, citing studies and information regarding the onset of cauda equina syndrome. We reiterate that the ALJ's reliance on Dr. Kriss's opinion was not "so unreasonable that it must be viewed as erroneous as a matter of law." *Ira A. Watson Dep't Store,* 34 S.W.3d at 52.

### III. The ALJ properly articulated the basis for her decision.

Next Lymon argues that the ALJ failed to consider a myriad of details in the record, like how cauda equina syndrome could arise in a short period of

time, the broken cranks at Georgia Pacific, and the pressure placed on the spine when lifting or standing. This Court has held that Kentucky Revised Statute (KRS) 342.285 requires an ALJ to render an opinion that "summarizes the conflicting evidence concerning disputed facts; weighs that evidence to make findings of fact; and determines the legal significance of those findings." *Arnold v. Toyota Motor Mfg.,* 375 S.W.3d 56, 61-62 (Ky. 2012). Only then can a reviewing authority determine whether the findings are supported by substantial evidence and reasonable. *Id.* While Lymon is entitled to findings that demonstrate the ALJ appropriately considered her theory of the case, we find no error. *Sidney Coal Co., Inc./Clean Energy Mining Co. v. Huffman,* 233 S.W.3d 710, 714 (Ky. 2007).

The ALJ's nineteen-page opinion and order summarizes the deposition testimony, medical records from the emergency room, and the four doctors who either treated Lymon or formed medical opinions regarding her conditions. The ALJ noted that she was unpersuaded by Lymon's testimony and found it compelling that Dr. Lockstadt, Lymon's treating surgeon, did not relate Lymon's back condition to her work activities. She also discussed that while Drs. Zehner and Cook opined that Lymon's condition was related to her work activities, their opinions were based on Lymon's account of her work duties, which the ALJ believed was inaccurate, presumably based in part on Markle's testimony. The ALJ heard Lymon's description of her work, symptoms and conditions through her deposition testimony. The opinion and order provides a comprehensive overview of the evidence, reflects that the ALJ weighed the

13

varying evidence and includes sufficient information that indicates the basis for the ALJ's decision.

In her opinion the ALJ demonstrated that she thoroughly considered and reviewed all medical evidence in the record, including any deposition testimony. "An ALJ may reject any testimony and believe or disbelieve various parts of the evidence, . . . . The mere existence of evidence that would have supported a different decision is an inadequate ground for reversal on appeal." *American Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602 (Ky. 2010). The ALJ articulated her reliance on Dr. Kriss's opinion in deciding to dismiss Lymon's claim. An ALJ is not required to recount the record with line-by-line specificity or to acknowledge every statement in the record. An ALJ's opinion and order must inform the parties of the basis of the decision, and the ALJ in this case did exactly that.

## CONCLUSION

"Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Ira A. Watson Dept. Store,* 34 S.W.3d at 52 (citing *McCloud v. Beth-Elkhorn Corp.,* 514 S.W.2d 46 (Ky. 1974)). While the record here obviously contains conflicting medical evidence, Lymon is not entitled to reversal unless she demonstrates that the evidence was so overwhelming as to compel a favorable finding. *Kroger,* 338 S.W.3d at 273. She failed to do so. Therefore, the ALJ did not err in dismissing her claim for workers'

14

compensation benefits. Accordingly, we affirm the Courts of Appeals' decision affirming the Board and upholding the ALJ's opinion and order.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Alan Steven Rubin

COUNSEL FOR APPELLEE,
GEORGIA PACIFIC:

Steven Lynn Kimbler
Pohl & Aubrey, PSC

ADMINISTRATIVE LAW JUDGE:

Monica J. Rice-Smith

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman